**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **KIANA CARLISLE,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 2:25-00131-N** |
| | ) | |
| **FRANK BISIGNANO,** | ) | |
| ***Commissioner of Social Security*,** | ) | |
| **Defendant.** | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Kiana Carlisle brought this action under 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of a final decision of the Defendant Commissioner of Social Security denying her applications for a period of disability and disability insurance benefits (collectively, "DIB") under Title II of the Social Security Act, 42 U.S.C. § 401, *et seq*., and for supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. § 1381, *et seq*.[1] Upon due consideration of the parties' briefs (Docs# 11, 12, 13) and those portions of the certified transcript of the administrative record (Doc# 10) relevant to the issues

[1] "Title II of the Social Security Act (Act), 49 Stat. 620, as amended, provides for the payment of insurance benefits to persons who have contributed to the program and who suffer from a physical or mental disability. 42 U.S.C. § 423(a)(1)(D) (1982 ed., Supp. III). Title XVI of the Act provides for the payment of disability benefits to indigent persons under the Supplemental Security Income (SSI) program. § 1382(a)." *Bowen v. Yuckert*, 482 U.S. 137, 140, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987).

raised, the Court finds that the Commissioner's final decision is due to be **AFFIRMED**.[2]

## I. *Procedural Background*

Carlisle protectively filed the subject DIB and SSI applications with the Social Security Administration ("SSA") on April 8, 2022. After the applications were denied initially, and again on reconsideration, Carlisle requested a hearing on her applications with an Administrative Law Judge ("ALJ") of the SSA's Office of Hearings Operations, which was held on November 27, 2023. On February 27, 2024, the ALJ issued an unfavorable decision on Carlisle's applications, finding her not entitled to benefits. (*See* Doc# 10, PageID.47-80).

The Commissioner's decision on Carlisle's applications became final when the Appeals Council with the SSA's Office of Appellate Operations denied her request for review of the ALJ's unfavorable decision on February 3, 2025. (*See id.*, PageID.34-38). Carlisle subsequently brought this action under §§ 405(g) and 1383(c)(3) for judicial review of the Commissioner's final decision. *See* 42 U.S.C. § 1383(c)(3) ("The final determination of the Commissioner of Social Security after a hearing [for SSI benefits] shall be subject to judicial review as provided in section 405(g) of this title to the same extent as the Commissioner's final

---

[2] With the consent of the parties, the Court has designated the undersigned Magistrate Judge to conduct all proceedings and order the entry of judgment in this civil action, in accordance with 28 U.S.C. § 636(c), Federal Rule of Civil Procedure 73, and S.D. Ala. GenLR 73. (*See* Docs# 7, 8).

With the Court's agreement, the parties waived the opportunity to present oral argument. (*See* Docs# 15, 16).

determinations under section 405 of this title."); 42 U.S.C. § 405(g) ("Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow."); *Ingram v. Comm'r of Soc. Sec. Admin.*, 496 F.3d 1253, 1262 (11th Cir. 2007) ("The settled law of this Circuit is that a court may review, under sentence four of section 405(g), a denial of review by the Appeals Council.").

## II. *Standards of Review*

"In Social Security appeals, [the Court] must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotation omitted).

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *T-Mobile South*, *LLC* v. *Roswell*, 574 U.S. [293], [301], 135 S. Ct. 808, 815, 190 L. Ed. 2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence … is "more than a mere scintilla." *Ibid.*; see, *e.g.*, [*Richardson v.*] *Perales*, 402 U.S. [389,] 401, 91 S. Ct. 1420[, 28 L. Ed. 2d 842 (1971)] (internal quotation marks omitted). It means—and

> means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison*, 305 U.S. at 229, 59 S. Ct. 206. See *Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S. Ct. 1816, 144 L. Ed. 2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

*Biestek v. Berryhill*, 587 U.S. 97, 102-03, 139 S. Ct. 1148, 203 L. Ed. 2d 504 (2019).

In reviewing the Commissioner's factual findings, a court "'may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].' " *Winschel*, 631 F.3d at 1178 (quoting *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (alteration in original) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))). "'Even if the evidence preponderates against the [Commissioner]'s factual findings, [the Court] must affirm if the decision reached is supported by substantial evidence.'" *Ingram*, 496 F.3d at 1260 (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)).

Put another way, "[u]nder the substantial evidence standard, we cannot look at the evidence presented to [an administrative agency] to determine if interpretations of the evidence other than that made by the [agency] are possible. Rather, we review the evidence that was presented to determine if the findings made by the [agency] were unreasonable. To that end, [judicial] inquiry is highly deferential and we consider only whether there is substantial evidence for the findings made by the [agency], *not* whether there is substantial evidence for some *other* finding that could have been, but was not, made. That is, even if the evidence could support multiple conclusions, we must affirm the agency's decision unless

there is no reasonable basis for that decision." *Adefemi v. Ashcroft*, 386 F.3d 1022, 1029 (11th Cir. 2004) (en banc) (citations and quotation omitted).[3]

"Yet, within this narrowly circumscribed role, [courts] do not act as automatons. [A court] must scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence[.]" *Bloodsworth*, 703 F.2d at 1239 (citations and quotation omitted). *See also Owens v. Heckler*, 748 F.2d 1511, 1516 (11th Cir. 1984) (per curiam) ("We are neither to conduct a de novo proceeding, nor to rubber stamp the administrative decisions that come before us. Rather, our function is to ensure that the decision was based

[3] *See also Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991) (per curiam) ("The court need not determine whether it would have reached a different result based upon the record" because "[e]ven if we find that the evidence preponderates against the [Commissioner]'s decision, we must affirm if the decision is supported by substantial evidence."); *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (under the substantial evidence standard, "we do not reverse the [Commissioner] even if this court, sitting as a finder of fact, would have reached a contrary result…"); *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("In light of our deferential review, there is no inconsistency in finding that two successive ALJ decisions are supported by substantial evidence even when those decisions reach opposing conclusions. Faced with the same record, different ALJs could disagree with one another based on their respective credibility determinations and how each weighs the evidence. Both decisions could nonetheless be supported by evidence that reasonable minds would accept as adequate."); *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991) ("Substantial evidence may even exist contrary to the findings of the ALJ, and we may have taken a different view of it as a factfinder. Yet, if there is substantially supportive evidence, the findings cannot be overturned."); *Edlund v. Massanari*, 253 F.3d 1152, 1156 (9th Cir. 2001), *as amended on reh'g* (Aug. 9, 2001) ("If the evidence is susceptible to more than one rational interpretation, the court may not substitute its judgment for that of the Commissioner.").

on a reasonable and consistently applied standard, and was carefully considered in light of all the relevant facts.").

Moreover, the "substantial evidence" "standard of review applies only to findings of fact. No similar presumption of validity attaches to the [Commissioner]'s conclusions of law, including determination of the proper standards to be applied in reviewing claims." *MacGregor v. Bowen,* 786 F.2d 1050, 1053 (11th Cir. 1986) (quotation omitted). *Accord, e.g.*, *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982) ("Our standard of review for appeals from the administrative denials of Social Security benefits dictates that '(t)he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive ....' 42 U.S.C.A. s 405(g) … As is plain from the statutory language, this deferential standard of review is applicable only to findings of fact made by the Secretary, and it is well established that no similar presumption of validity attaches to the Secretary's conclusions of law, including determination of the proper standards to be applied in reviewing claims." (some quotation marks omitted)). This Court "conduct[s] 'an exacting examination' of these factors." *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam) (quoting *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990)). "'The [Commissioner]'s failure to apply the correct law or to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal.'" *Ingram*, 496 F.3d at 1260 (quoting *Cornelius v. Sullivan*, 936 F.2d 1143, 1145-46 (11th Cir. 1991)). *Accord Keeton v. Dep't of Health & Human Servs.*, 21

F.3d 1064, 1066 (11th Cir. 1994). In sum, courts "review the Commissioner's factual findings with deference and the Commissioner's legal conclusions with close scrutiny." *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). *See also Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) (per curiam) ("In Social Security appeals, we review *de novo* the legal principles upon which the Commissioner's decision is based. *Chester v. Bowen*, 792 F.2d 129, 131 (11th Cir. 1986). However, we review the resulting decision only to determine whether it is supported by substantial evidence. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1158–59 (11th Cir. 2004).").[4]

---

[4] However, the "burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409, 129 S. Ct. 1696, 173 L. Ed. 2d 532 (2009). *Accord Viverette v. Comm'r of Soc. Sec.*, 13 F.4th 1309, 1317–18 (11th Cir. 2021). *See also Scharlow v. Schweiker*, 655 F.2d 645, 648 (5th Cir. Unit A Sept. 8, 1981) (per curiam) ("It is the claimant who bears the weighty burden of establishing the existence of a disability within the meaning of the Act, and therefore the appellant has the burden of showing that the Secretary's decision is not supported by substantial evidence in the record." (citation omitted)); *Sims v. Comm'r of Soc. Sec.*, 706 F. App'x 595, 604 (11th Cir. 2017) (per curiam) (unpublished) ("Under a substantial evidence standard of review, [the claimant] must do more than point to evidence in the record that supports her position; she must show the absence of substantial evidence supporting the ALJ's conclusion."). "[D]istrict court judges are not required to ferret out delectable facts buried in a massive record," *Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) (28 U.S.C. § 2254 habeas proceedings), and " '[t]here is no burden upon the district court to distill every potential argument that could be made based on the materials before it…' " *Solutia, Inc. v. McWane, Inc.*, 672 F.3d 1230, 1239 (11th Cir. 2012) (per curiam) (Fed. R. Civ. P. 56 motion for summary judgment) (quoting *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) (en banc)) (ellipsis added). The Eleventh Circuit Court of Appeals, whose review of Social Security appeals "is the same as that of the district court[,]" *Miles v. Chater*, 84 F.3d 1397, 1400 (11th Cir. 1996) (per curiam), generally deems waived claims of error not fairly raised in the district court. *See Stewart v. Dep't of Health & Human Servs.*, 26 F.3d 115, 115-

16 (11th Cir. 1994) ("As a general principle, [the court of appeals] will not address an argument that has not been raised in the district court…Because Stewart did not present any of his assertions in the district court, we decline to consider them on appeal." (applying rule in appeal of judicial review under 42 U.S.C. §§ 405(g), 1383(c)(3)); *Crawford v. Comm'r Of Soc. Sec.*, 363 F.3d 1155, 1161 (11th Cir. 2004) (per curiam) (same); *Hunter v. Comm'r of Soc. Sec.*, 651 F. App'x 958, 962 (11th Cir. 2016) (per curiam) (unpublished) (same); *Cooley v. Comm'r of Soc. Sec.*, 671 F. App'x 767, 769 (11th Cir. 2016) (per curiam) (unpublished) ("As a general rule, we do not consider arguments that have not been fairly presented to a respective agency or to the district court. *See Kelley v. Apfel*, 185 F.3d 1211, 1215 (11th Cir. 1999) (treating as waived a challenge to the administrative law judge's reliance on the testimony of a vocational expert that was 'not raise[d] . . . before the administrative agency or the district court')."); *In re Pan Am. World Airways, Inc., Maternity Leave Practices & Flight Attendant Weight Program Litig.*, 905 F.2d 1457, 1462 (11th Cir. 1990) ("[I]f a party hopes to preserve a claim, argument, theory, or defense for appeal, she must first clearly present it to the district court, that is, in such a way as to afford the district court an opportunity to recognize and rule on it."); *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999) (applying *In re Pan American World Airways* in Social Security appeal); *Sorter v. Soc. Sec. Admin., Comm'r*, 773 F. App'x 1070, 1073 (11th Cir. 2019) (per curiam) (unpublished) ("Sorter has abandoned on appeal the issue of whether the ALJ adequately considered her testimony regarding the side effects of her pain medication because her initial brief simply mentions the issue without providing any supporting argument. *See Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278–79 (11th Cir. 2009) (explaining that 'simply stating that an issue exists, without further argument or discussion, constitutes abandonment of that issue')."); *Figuera v. Comm'r of Soc. Sec.*, 819 F. App'x 870, 871 n.1 (11th Cir. 2020) (per curiam) (unpublished) ("Figuera also argues the ALJ failed to properly assess her credibility … However, Figuera did not adequately raise this issue in her brief before the district court. She raised the issue only summarily, without any citations to the record or authority. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) (noting that a party 'abandons a claim when he either makes only passing references to it or raises it in a perfunctory manner without supporting arguments and authority'). As a result, we do not address the sufficiency of the ALJ's credibility finding."); *Turner v. Social Security Administration, Commissioner*, No. 21-13590, 2022 WL 842188, at *2 (11th Cir. Mar. 22, 2022) (per curiam) (unpublished) ("An appellant forfeits an argument by 'mak[ing] only passing references to it or rais[ing] it in a perfunctory manner without supporting arguments and authority.' *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014). In her briefing, Turner states that the Appeals Council failed to request her records or obtain a consultative evaluation. But she cites no authorities or makes any other argument tending to establish

Moreover, an ALJ's decision must "state with at least some measure of clarity the grounds for [the] decision." *Owens*, 748 F.2d at 1516; *Winschel*, 631 F.3d at 1179. A court cannot "affirm simply because some rationale might have supported the [Commissioner]' conclusion[,]" as "[s]uch an approach would not advance the ends of reasoned decision making." *Owens*, 748 F.2d at 1516. Rather, "an agency's order must be upheld, if at all, on the same basis articulated in the order by the agency itself." *Fed. Power Comm'n v. Texaco Inc.,* 417 U.S. 380, 397, 94 S. Ct. 2315, 41 L. Ed. 2d 141 (1974) (quotation omitted). *See also Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir. 2000) ("The ALJ's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council."); *Nance v. Soc. Sec. Admin., Comm'r*, 781 F. App'x 912, 921 (11th Cir.

---

that it had a duty to do so. She has therefore failed to adequately develop this argument, and it is forfeited."); *Harner v. Soc. Sec. Admin., Comm'r*, 38 F.4th 892, 899 (11th Cir. 2022) *("*Harner's references to the substantiality of the evidence, the administrative law judge's analysis of her fibromyalgia, and the administrative judge's consideration of her daily activities as '[d]iminish[ing] the [p]ersuasiveness of [h]er [a]llegations' consist only of block quotations from and cursory mentions of various decisions of this and other courts. Harner failed to refer to the facts of her case or to provide any meaningful explanation as to how the decisions she cites apply to her claim, her arguments are forfeited."); *Grant v. Soc. Sec. Admin., Comm'r*, No. 21-12927, 2022 WL 3867559, at *2 (11th Cir. Aug. 30, 2022) (per curiam) (unpublished) (appellant forfeited most challenges where "brief consist[ed] largely of block quotations with only passing or conclusory references to how the law and the relevant facts relate"); *Walker v. Comm'r, Soc. Sec. Admin.*, 835 F. App'x 538, 542 (11th Cir. 2020) (per curiam) (unpublished ("As the government notes, Walker's argument on this issue consists of lengthy block quotes to caselaw without any attempt to apply the law to the facts of this case. He has thus abandoned the issue by failing to develop his arguments.").

2019) (per curiam) (unpublished)[5] ("Agency actions … must be upheld on the same bases articulated in the agency's order." (citing *Texaco Inc.,* 417 U.S. at 397, and *Newton*, 209 F.3d at 455)).

Relevant here, eligibility for DIB and SSI requires a showing that the claimant is disabled, 42 U.S.C. §§ 423(a)(1)(E), 1382(a)(1)-(2), meaning that the claimant is unable "to engage in any substantial gainful activity by reason of a medically determinable physical or mental impairment ... which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A).

> The Social Security Regulations outline a five-step, sequential evaluation process used to determine whether a claimant is disabled: (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a residual functional capacity ("RFC") assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's RFC, age, education, and work experience.

*Winschel*, 631 F.3d at 1178 (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 416.920(a)(4)(i)-(v); *Phillips*, 357 F.3d at 1237-39).[6]

---

[5] In this circuit, "[u]npublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. R. 36-2. *See also Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 n.1 (11th Cir. 2015) (per curiam) ("Cases printed in the Federal Appendix are cited as persuasive authority.").

[6] The Court will hereinafter use "Step One," "Step Two," etc. when referencing individual steps of this five-step sequential evaluation.

"These regulations place a very heavy burden on the claimant to demonstrate both a qualifying disability and an inability to perform past relevant work." *Moore*, 405 F.3d at 1211 (citing *Spencer v. Heckler*, 765 F.2d 1090, 1093 (11th Cir. 1985)). "In determining whether the claimant has satisfied this initial burden, the examiner must consider four factors: (1) objective medical facts or clinical findings; (2) the diagnoses of examining physicians; (3) evidence of pain; and (4) the claimant's age, education, and work history." *Jones v. Bowen*, 810 F.2d 1001, 1005 (11th Cir. 1986) (per curiam) (citing *Tieniber v. Heckler*, 720 F.2d 1251, 1253 (11th Cir. 1983) (per curiam)). "These factors must be considered both singly and in combination. Presence or absence of a single factor is not, in itself, conclusive." *Bloodsworth*, 703 F.2d at 1240 (citations omitted).

If, in Steps One through Four of the five-step evaluation, a claimant proves that he or she has a qualifying disability and cannot do his or her past relevant work, it then becomes the Commissioner's burden, at Step Five, to prove that the claimant is capable—given his or her age, education, and work history—of engaging in other kinds of substantial gainful employment that exist in significant numbers in the national economy. *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999); *Sryock v. Heckler*, 764 F.2d 834, 836 (11th Cir. 1985). Finally, although the "claimant bears the burden of demonstrating the inability to return to [his or] her past relevant work, the Commissioner of Social Security has an obligation to develop a full and fair record." *Shnorr v. Bowen*, 816 F.2d 578, 581 (11th Cir. 1987). *See also Ellison v. Barnhart*, 355 F.3d 1272, 1276 (11th Cir. 2003) (per curiam)

("It is well-established that the ALJ has a basic duty to develop a full and fair record. Nevertheless, the claimant bears the burden of proving that he is disabled, and, consequently, he is responsible for producing evidence in support of his claim." (citations omitted)). "This is an onerous task, as the ALJ must scrupulously and conscientiously probe into, inquire of, and explore for all relevant facts. In determining whether a claimant is disabled, the ALJ must consider the evidence as a whole." *Henry v. Comm'r of Soc. Sec.*, 802 F.3d 1264, 1267 (11th Cir. 2015) (per curiam) (citation and quotation omitted).

If a court determines that the Commissioner reached a decision "by focusing upon one aspect of the evidence and ignoring other parts of the record[, i]n such circumstances [the court] cannot properly find that the administrative decision is supported by substantial evidence. It is not enough to discover a piece of evidence which supports that decision, but to disregard other contrary evidence." *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986). Nevertheless, "'there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision ... is not a broad rejection which is not enough to enable [a reviewing court] to conclude that the ALJ considered [the claimant's] medical condition as a whole.'" *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014) (quoting *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005) (per curiam) (quotation and brackets omitted)).

When, as here, the ALJ denies benefits and the Appeals Council denies review of that decision, a court "review[s] the ALJ's decision as the

Commissioner's final decision[,]" *Doughty*, 245 F.3d at 1278, and the Court "will look only to the evidence actually presented to the ALJ in determining whether the ALJ's decision is supported by substantial evidence." *Falge v. Apfel*, 150 F.3d 1320, 1323 (11th Cir. 1998). But "when a claimant properly presents new evidence to the Appeals Council, a reviewing court must consider whether that new evidence renders the denial of benefits erroneous." *Ingram*, 496 F.3d at 1262.

### III. *Summary of the ALJ's Decision*

At Step One, the ALJ found that Carlisle met the applicable insured status requirements for DIB through December 31, 2025, and that she had not engaged in substantial gainful activity since her alleged disability onset date of February 1, 2020.[7] (Doc# 10, PageID.52). At Step Two,[8] the ALJ found that Carlisle had the following severe impairments: obesity, bipolar disorder, anxiety disorder, post-

[7] "For SSI claims, a claimant becomes eligible in the first month where she is both disabled and has an SSI application on file. For DIB claims, a claimant is eligible for benefits where she demonstrates disability on or before the last date for which she were insured." *Moore*, 405 F.3d at 1211 (citation omitted).

[8] "The severity regulation increases the efficiency and reliability of the evaluation process by identifying at an early stage those claimants whose medical impairments are so slight that it is unlikely they would be found to be disabled even if their age, education, and experience were taken into account." *Yuckert*, 482 U.S. at 153. *See also Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1265 (11th Cir. 2019) (per curiam) (Step Two "is a 'threshold inquiry' and 'allows only claims based on the most trivial impairments to be rejected.' " (quoting *McDaniel v. Bowen*, 800 F.2d 1026, 1031 (11th Cir. 1986)). "[A]n 'impairment is not severe only if the abnormality is so slight and its effect so minimal that it would clearly not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience.' A claimant's burden to establish a severe impairment at step two is only 'mild.' " *Schink*, 935 F.3d at 1265 (citation omitted) (quoting *McDaniel*, 800 F.2d at 1031).

traumatic stress disorder (PTSD), hypertension, Sjogren's syndrome, status post left ulnar nerve transposition secondary to left ulnar nerve neuropathy, and migraine headaches. (Doc# 10, PageID.53-62). At Step Three,[9] the ALJ found that Carlisle did not have an impairment or combination of impairments that met or equaled the severity of a specified impairment in Appendix 1 of the Listing of Impairments, 20 C.F.R. § 404, Subpt. P, App. 1. (Doc# 10, PageID.62-63).

At Step Four,[10] the ALJ determined that Carlisle had the residual functional capacity (RFC) "to perform light work as defined in 20 CFR 404.1567(b)

[9] Step Three "identif[ies] those claimants whose medical impairments are so severe that it is likely they would be found disabled regardless of their vocational background." *Yuckert*, 482 U.S. at 153. *See also Sullivan v. Zebley*, 493 U.S. 521, 525, 110 S. Ct. 885, 107 L. Ed. 2d 967 (1990) ("In the third step, the medical evidence of the claimant's impairment is compared to a list of impairments presumed severe enough to preclude any gainful work … If the claimant's impairment matches or is 'equal' to one of the listed impairments, he qualifies for benefits without further inquiry."); *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997) ("If the claimant's condition meets or equals the level of severity of a listed impairment, the claimant at this point is conclusively presumed to be disabled based on his or her medical condition.").

[10] At Step Four,

> the ALJ must assess: (1) the claimant's residual functional capacity ("RFC"); and (2) the claimant's ability to return to her past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). As for the claimant's RFC, the regulations define RFC as that which an individual is still able to do despite the limitations caused by his or her impairments. 20 C.F.R. § 404.1545(a). Moreover, the ALJ will "assess and make a finding about [the claimant's] residual functional capacity based on all the relevant medical and other evidence" in the case. 20 C.F.R. § 404.1520(e). Furthermore, the RFC determination is used both to determine whether the claimant: (1) can return to her past relevant work under the fourth step; and (2) can adjust to other work under the fifth step…20 C.F.R. § 404.1520(e).

and 416.967(b)[[11]] except she can frequently climb ramps and stairs and occasionally climb ladders, ropes, and scaffolds[;] can frequently balance, stoop,

---

> If the claimant can return to her past relevant work, the ALJ will conclude that the claimant is not disabled. 20 C.F.R. § 404.1520(a)(4)(iv) & (f). If the claimant cannot return to her past relevant work, the ALJ moves on to step five.
>
> In determining whether [a claimant] can return to her past relevant work, the ALJ must determine the claimant's RFC using all relevant medical and other evidence in the case. 20 C.F.R. § 404.1520(e). That is, the ALJ must determine if the claimant is limited to a particular work level. *See* 20 C.F.R. § 404.1567. Once the ALJ assesses the claimant's RFC and determines that the claimant cannot return to her prior relevant work, the ALJ moves on to the fifth, and final, step.

*Phillips*, 357 F.3d at 1238-39 (footnote omitted). "[A]n ALJ's RFC assessment is an administrative finding based on all the relevant evidence, including both medical and nonmedical evidence." *Pupo v. Comm'r, Soc. Sec. Admin.*, 17 F.4th 1054, 1065 (11th Cir. 2021). *See also, e.g.*, *Moore v. Soc. Sec. Admin., Com'r*, 649 F. App'x 941, 945 (11th Cir. 2016) (per curiam) (unpublished) ("Moore argues that the administrative law judge 'substituted [her] opinion for' that provided by [the treating physician], but the task of determining a claimant's residual functional capacity and ability to work rests with the administrative law judge, not a doctor." (citing 20 C.F.R. § 404.1546(c) ("If your case is at the administrative law judge hearing level ..., the administrative law judge ... is responsible for assessing your residual functional capacity."))).

[11] "To determine the physical exertion requirements of different types of employment in the national economy, the Commissioner classifies jobs as sedentary, light, medium, heavy, and very heavy. These terms are all defined in the regulations … Each classification … has its own set of criteria." *Phillips*, 357 F.3d at 1239 n.4. The criteria for "light" work are as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or

kneel, crouch, and crawl[;] can frequently handle and finger on the left side[;] can have occasional exposure to extreme temperatures and vibrations[;] should avoid unprotected heights[;] can understand, remember, and carry out simple instructions[;] can maintain attention to simple tasks for two-hour intervals[;] can have occasional contact with the public, supervisors, and coworkers[; and] can handle occasional changes in the work setting." (Doc# 10, PageID.63-71). Based on the RFC and the testimony of a vocational expert,[12] the ALJ found that Carlisle was unable to perform any past relevant work. (Doc# 10, PageID.71).

However, at Step Five, after considering additional testimony from the vocational expert, the ALJ found that there existed a significant number of other jobs in the national economy as a marker (~236,000 jobs nationally), routing clerk (~138,000 jobs nationally), and order caller (~18,000 jobs nationally) that Carlisle could perform given her RFC, age, education, and work experience. (*Id.*, PageID.71-72). Thus, the ALJ found that Carlisle was not "disabled" under the

> wide range of light work, you must have the ability to do substantially all of these activities. If someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. §§ 404.1567(b), 416.967(b).

[12] "A vocational expert is an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments. When the ALJ uses a vocational expert, the ALJ will pose hypothetical question(s) to the vocational expert to establish whether someone with the limitations that the ALJ has previously determined that the claimant has will be able to secure employment in the national economy." *Phillips*, 357 F.3d at 1240.

Social Security Act from her disability onset date through the date of the ALJ's decision, and was thus not entitled to benefits. (*Id.*, PageID.72-73).

## IV. *Analysis*

Carlisle claims that the ALJ reversibly erred in finding at Step Three that she did not meet either Listing 12.04 or 12.06. Relatedly, Carlisle argues that the ALJ in general "misrepresent[ed] the medical evidence and testimony" regarding her mental functioning.[13] No reversible error has been shown.

The ALJ found that Carlisle did not meet either Listing 12.04 (affective disorders) or 12.06 (anxiety-related disorders) because she failed to satisfy the "paragraph B" criteria.[14]

> In evaluating the severity of a claimant's mental impairment at steps two and three of the sequential analysis, the ALJ makes determinations as to the claimant's abilities in four broad functional

---

[13] Carlisle raises no claim of error as to the ALJ's consideration of her physical impairments.

[14] "With the exception of Listings 12.05 and 12.09, all of the section 12.00 Listings consist of (i) a statement describing the disorders addressed by the Listing; (ii) paragraph A criteria, which are a set of necessary medical findings; and (iii) paragraph B criteria, which list impairment-related functional limitations that are incompatible with the claimant's ability to do any gainful activity. Listings 12.02, 12.03, 12.04, and 12.06 also include additional functional criteria, known as paragraph C criteria. A claimant can meet one of these Listings only if 'the diagnostic description in the introductory paragraph and the criteria of both paragraphs A and B (or A and C, when appropriate) of the listed impairment are satisfied.' " *Bellew v. Acting Com'r of Soc. Sec.*, 605 F. App'x 917, 923-94 (11th Cir. 2015) (per curiam) (unpublished) (citations omitted) (quoting 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A)).

The ALJ found that Carlisle also did not satisfy the "paragraph C" criteria. (*See* Doc# 10, PageID.63). Carlisle does not challenge that finding here.

> areas known as "Paragraph B" criteria. *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1269 (11th Cir. 2019) (per curiam). The four areas consider the claimant's ability to (1) understand, remember, or apply information; (2) interact with others; (3) concentrate, persist, or maintain pace; and (4) adapt or manage herself. 20 C.F.R. § 404.1520a(c)(3)…The ALJ must assign a rating of none, mild, moderate, marked, or extreme to a claimant's limitation in each area of functioning. 20 C.F.R. § 404.1520a(c)(4). The ALJ must explain the results of this inquiry in the findings and conclusions. *Moore*, 405 F.3d at 1213–14. To find the presence of a listing-level mental impairment, the ALJ must find that a claimant has an "extreme" limitation in one of the four functional areas or a "marked" limitation in two. 20 C.F.R. pt. 404, subpt. P, app. 1, § 12.00(A)(2)(b). []A "mild" rating indicates that the claimant's functioning is "slightly limited;" a rating of "moderate" indicates a "fair" limitation. *Id.* § 12.00(F)(2)(b), (c).

*Buckwalter v. Acting Comm'r of Soc. Sec.*, 5 F.4th 1315, 1324–25 (11th Cir. 2021).

The ALJ found that Carlisle had only "mild" limitation in the area of understanding, remembering or applying information, and "moderate" limitation in each of the other three areas. (*See* Doc# 10, PageID.62-63). Carlisle argues that the record supports a finding of "marked" limitations in all four areas. She also argues that the ALJ "misrepresented the evidence of record to minimize the limitations caused by" her mental impairments, and that "the ALJ relied on this misrepresentation of the Function Reports and other evidence in evaluating the paragraph B criteria of the mental listings." (Doc# 11, PageID.1530, 1534).

The mere fact that the record could support a conclusion favorable to Carlisle does not entitle her to reversal of the ALJ's contrary conclusion. As has been previously noted, a reviewing court "'may not decide the facts anew, reweigh

the evidence, or substitute [its] judgment for that of the Commissioner" when reviewing the Commissioner's factual findings, *Winschel*, 631 F.3d at 1178 (quotation omitted), and it "must affirm if the decision reached is supported by substantial evidence[,]" "[e]ven if the evidence preponderates against" it. *Ingram*, 496 F.3d at 1260 (quotation omitted). Put another way, "[t]he question is not…whether ALJ could have reasonably [reached a different factual conclusion], but whether the ALJ was clearly wrong [not to]." *Werner v. Comm'r of Soc. Sec.*, 421 F. App'x 935, 938–39 (11th Cir. 2011) (per curiam) (unpublished).

Moreover, an ALJ does not "misrepresent" the record merely because he interprets it differently than a claimant, *see Battle v. Astrue*, 243 F. App'x 514, 523 (11th Cir. 2007) (per curiam) (unpublished) ("When deciding the case, it is the ALJ's duty to weigh the evidence and testimony, to resolve the conflicts in the evidence and testimony, and determine whether [a claimant is disabled], and we will not substitute our judgment for the ALJ's."); *Hunter v. Soc. Sec. Admin., Comm'r*, 808 F.3d 818, 822 (11th Cir. 2015) ("In light of our deferential review, there is no inconsistency in finding that two successive ALJ decisions are supported by substantial evidence even when those decisions reach opposing conclusions. Faced with the same record, different ALJs could disagree with one another based on their respective credibility determinations and how each weighs the evidence. Both decisions could nonetheless be supported by evidence that reasonable minds would accept as adequate."), or because he fails to expressly discuss all record evidence, *see Mitchell*, 771 F.3d at 782 ("[C]ontrary to Mitchell's

contention that the ALJ ignored evidence favorable to Mitchell, there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision is not a broad rejection which is not enough to enable a reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole." (quotation omitted)).

The ALJ's view of the record is reasonable and supported by substantial evidence. Much of the evidence Carlisle argues the ALJ ignored or downplayed consists of either bare diagnoses or Carlisle's subjective complaints regarding the effects of her mental impairments. "[T]he mere existence of [medical] impairments does not reveal the extent to which they limit [a claimant's] ability to work or undermine the ALJ's determination in that regard[,]" *Moore*, 405 F.3d at 1213 n.6; *see also McCruter*, 791 F.2d at 1547 ("[T]he 'severity' of a medically ascertained disability must be measured in terms of its effect upon ability to work, and not simply in terms of deviation from purely medical standards of bodily perfection or normality."), and an ALJ can discount a claimant's subjective testimony regarding the effects of her symptoms if other record evidence does not support it. *See generally* 20 C.F.R. §§ 404.1529, 416.929; *Foote v. Chater*, 67 F.3d 1553, 1560-61 (11th Cir. 1995) (per curiam) (explaining how the Commissioner is to evaluate claimants' subjective complaints of pain and other symptoms).[15] Indeed, much of Carlisle's brief on this point simply consists of a narrative summary of evidence

[15] Subjective complaints do not become objective evidence simply by being reported to medical professionals and included in treatment notes.

she considers more favorable to her claims of disability, without any accompanying explanation of how that evidence, either singularly or as a whole, undermines the ALJ's decision to the point that it cannot even meet the "substantial evidence" threshold of evidentiary sufficiency, which is "not high." *Biestek*, 587 U.S. at 103. Rather than attempting to persuade the Court, Carlisle instead appears to be inviting the Court to impermissibly decide the facts anew, reweigh the evidence, or substitute its judgment for that of the Commissioner. *Winschel*, 631 F.3d at 1178.

This Court's task is to "consider only whether there is substantial evidence for the findings made by the [ALJ], *not* whether there is substantial evidence for some *other* finding that could have been, but was not, made." *Adefemi*, 386 F.3d at 1029 (quotation marks omitted). While the record could certainly support a finding of more marked limitations than those found by the ALJ, it does not compel such a result, much less that Carlisle experiences disabling symptoms as a result of her mental impairments. As Carlisle points out, medical records note such symptoms as "anxious mood," "agitation," "rocking," "hyperverbal" and "loud speech," "labile mood and affect," "irritable and anxious mood and affect," "paranoia," etc., but they fail to specify the severity of those symptoms. Where level of severity is noted, it is often in mild or moderate terms—"a bit driven," "slightly bizarre in her behavior," "fairly dramatic and aggressive interpersonally, "some imprecision language," "mild to moderate disorganization" in thought process, "some circumstantial thought content," etc. Normal mental status

examinations are also noted throughout the medical record. While some symptoms are noted in more severe terms, such as "poor insight," reasonable minds could still differ over whether such symptoms cause marked or merely moderate limitation.

As the ALJ also noted, there "is no indication that [Carlisle] has been hospitalized for any symptoms or complications related to her psychological symptoms." (Doc# 10, PageID.69). Indeed, the records reveal an overall conservative regimen for treating Carlisle's mental impairments, mostly consisting of therapy and trying different combinations of medications. The record also indicates some non-compliance with taking her medications as prescribed, and later treatment notes indicate that "talking her issues out with a Psychiatrist has been good for" Carlisle, and that her "medications are helping" when "she is taking medications as prescribed…" (*Id.*, PageID.1519). *See Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988) ("A medical condition that can reasonably be remedied either by surgery, treatment, or medication is not disabling." (quotation marks omitted)). In sum, Carlisle has failed to show that the ALJ's view of the record was unreasonable and not supported by substantial evidence. The undersigned now turns specifically to the ALJ"s "paragraph B" findings.

In justifying a "mild" limitation in the "paragraph B" area of understanding, remembering or applying information—which "refers to the abilities to learn, recall, and use information to perform work activities[,]" 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 12.00E(1)—the ALJ stated:

> The claimant alleged problems completing tasks and with her memory in her Function Report but she also reported that she is able to shop in stores, pay bills, handle a savings account, and maintain a checking account (Exhibits 6E and 13E). She reported in one Function Report that she is able to follow spoken instructions very well (Exhibit 6E). Her memory was described as unremarkable or normal in treatment records (Exhibits 17F, 18F, 19F, 22F, and 27F). She told [consultative examining psychologist] Dr. [Jerry] Gr[a]gg that she is able to drive (Exhibit 9F). The objective findings and the reports regarding her activities and retained abilities do not support a finding of greater than mild limitation in her ability to understand, remember, or apply information.

(Doc# 10, PageID.62).

Carlisle argues that the ALJ's "mild" finding is not supported by the evidence because she stated in her Function Report and told medical professionals that her "mind races," that her "thought process [i]s disorganized or circumstantial[,]" that she has difficulty completing tasks, and that she has difficulty "following instructions because she [i]s easily confused." (Doc# 11, PageID.1535). However, the ALJ expressly acknowledged those "alleged problems completing tasks and with her memory in her Function Report[,]" but concluded that those problems did not prevent her from being "able to shop in stores, pay bills, handle a savings account,…maintain a checking account[, or] follow spoken instructions very well[,]" as her Function Reports also indicated (Doc# 10, PageID.380, 382, 412), or from being able to drive, as she told Dr. Grag (*id.*,

PageID.810).[16] This was a reasonable resolution of conflicting evidence—that, whatever other effects Carlisle's racing mind, difficulty finishing tasks, and being easily confused had on her ability to function, they did not significantly hinder her ability to perform the aforementioned tasks that Carlisle herself reported she was able to accomplish. Treatment records also did not support significant difficulty with memory, describing Carlisle's as "unremarkable" or "normal." (E.g., Doc# 10, PageID.1165, 1195, 1315). Dr. Gragg also opined that Carlisle "has adequate intellectual functioning to be able to understand and remember instructions," though "her ability to follow through on those instructions…is moderately impinged" (Doc# 10, PageID.810), and the ALJ found this part of Dr. Gragg's opinion to be persuasive. (*Id.*, PageID.70-71). The ALJ's finding of a less than marked limitation in the area of understanding, remembering or applying information is supported by substantial evidence.

In justifying a "moderate" limitation in the area of interacting with others—which "refers to the abilities to relate to and work with supervisors, co-workers, and the public[,]" 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 12.00E(2)—the ALJ stated:

> The claimant alleged problems with her mood and anxiety and that she does not like crowds. However, she denied problems getting along

[16] Admittedly, her Function Reports indicate that she "rarely drives" and "only very short distances," and that she "sometimes has driving fear" and will at those times contact family members to drive her in her car. (Doc# 10, PageID.381). However, that she understands how to drive is the fact relevant to "understanding, remembering or applying information."

> with others in her Function Reports (Exhibits 6E and 13E). She reported that she has never been fired or laid off from a job because of problems getting along with others. She indicated that she spends time with others and that she shops in stores. The claimant was described as pleasant, cooperative, and interactive in treatment records (Exhibits 1F, 2F, 3F, 6F, 7F, and 18F). The undersigned finds the claimant to have some limitation in this area considering her depression, anxiety, and allegations but the objective findings and the reports regarding the claimant's activities and retained abilities do not support a finding of greater than moderate limitation in her ability to interact with others.

(Doc# 10, PageID.62-63).

Carlisle challenges this finding as follows:

> [Carlisle's] first Function Report indicates she interacts only with family members and avoids other people as much as possible. (Tr. 348). In her second Function Report she indicated she did not want to be around people (Tr. 376). She reiterated that she had no social life at all and only interacted with her children and family. (Tr. 380). She also reported she had been sent home from work due to anxiety caused by authority figures or altercations with coworkers. (Tr. 381). At her psychiatric examination on August 21, 2023, she was described as, "a bit driven, slightly bizarre in her behavior, also fairly dramatic and aggressive interpersonally…" (Tr. 1278). On September 18, 2023, she reported difficulty trusting others and anger. (Tr. 1335). On November 13, 2023, the mental status exam revealed distrust for others, and paranoia. (Tr. 1475). The record shows a marked limitation in interacting with others[.]

(Doc# 11, PageID.1535).

Even considering this evidence with that the ALJ cited, reasonable minds could still conclude that Carlisle has only moderate limitation in this area. Interacting with family still involves interpersonal skills. While Carlisle indicated

she "did not want to be around people," this could be indicative of a personal preference rather than a medical necessity, and does not command a conclusion that Carlisle can only function around family—for instance, plenty of introverts are still capable of functioning in a workplace setting. Indeed, the fact that Carlisle was noted as "pleasant, cooperative, and interactive" with treatment providers indicates she is capable of some interaction with non-family members. The ALJ thought so, limiting Carlisle to "occasional contact with the public, supervisors, and coworkers." While Carlisle stated in her later Function Report that her "anxiety caused by authority figures caused [her] to be sent home from work twice" and that she "did get in an altercation with a coworker at work but…didn't get fired" (Doc# 10, PageID.414), she also stated in her earlier Function Report that she "got along well with authority figures" in her "past jobs," though they still caused anxiety because they "never appreciated [her] work." (*Id.*, PageID.382). While the record would have supported a finding of limitation in the area of interacting with others, the ALJ was not clearly wrong for finding that it only showed moderate limitation.

In justifying a "moderate" limitation in the area of adapting or managing oneself—which "refers to the abilities to learn, recall, and use information to perform work activities[,]" 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 12.00E(4)—the ALJ stated:

> The claimant reported that she is able perform household chores and take care of her activities of daily living without assistance (Exhibit

> 9F). She told treatment providers that she is able to care for herself (Exhibits 6F, 7F, 12F, 13F, 14F, 18F, 22F, 26F, and 27F). She reported in one of her Function Reports that she is able to take care of her personal care and take medication without reminders (Exhibit 6E). She also reported that she is able to shop in stores, drive, pay bills, handle a savings account, and maintain a checking account (Exhibits 6E, 13E, and 9F). There are some poor insight findings in the record but there were also fair, normal, or intact insight findings in the record (Exhibits 6F, 7F, 9F, 14F, and 20F). The objective findings and the reports regarding her activities and retained abilities do not support a finding that she has greater than moderate limitation in this area.

(Doc# 10, PageID.63).

Carlisle challenges this finding as follows:

> In her first Function Report Ms. Carlisle indicated she was stressed all day long. (Tr. 345). She had difficulty with overthinking and worry. (Tr. 347-348). In her second Function Report she was constantly stressed and needed help from her family to take care of her children and pets. (Tr. 377). She reported she had a hard time focusing and concentrating while trying to read because her mind raced. (Tr. 380). She stated she did not handle stress or changes in routine well. (Tr. 382). As stated above, her psychiatric records indicate difficulty with disorganized or circumstantial thought process, paranoia, mistrust of others, agitation, worry, and anxiety. (Tr. 1278, 1282, 1335, 1340, 1475, 1486). On October 9, 2023, Dr. Hodo noted she demonstrated illogical thoughts, difficulty focusing, flight of ideas, rambling thought pattern, delusional thoughts, and constricted affect. (Tr. 1341). The evidence shows marked limitations in adapting or managing herself.

(Doc# 11, PageID.1535).

Much of the evidence Carlisle cites on this issue are her own subjective complaints regarding the intensity of her symptoms, which the ALJ reasonably

found were not fully supported by the objective medical evidence and her own reports of daily activities. While Carlisle does cite other symptoms noted in the objective records, the intensity of those symptoms is largely unspecified, and reasonable minds could differ over whether it supports only a "moderate" limitation in this area, as the ALJ found, or a "marked" limitation, as Carlisle claims it does. In sum, Carlisle has failed to persuade the undersigned that the ALJ's findings of less than marked limitation in three of the "paragraph B criteria," and thus the finding that Carlisle did not meet Listing 12.04 or 12.06, is not supported by at least substantial evidence, even if the evidence preponderates against those findings.[17]

No reversible error having been shown, the Court finds that the Commissioner's final decision denying Carlisle's applications for benefits is due to be **AFFIRMED**.

## V. *Conclusion*

In accordance with the foregoing analysis, the Commissioner's final decision denying Carlisle's April 8, 2022 DIB and SSI applications is **AFFIRMED** under sentence four of 42 U.S.C. § 405(g).

---

[17] Thus, the undersigned need not decide whether the ALJ's finding of moderate limitation in the area of concentrating, persisting or maintaining pace is also supported by substantial evidence. Carlisle does not argue that "extreme" limitation should be found for any of the "paragraph B" areas, and even if he is correct that the ALJ should have found a "marked" limitation in this area, Carlisle would still not meet Listing 12.04 or 12.06 because substantial evidence supports the ALJ's decision to find less than marked limitation in the other three areas.

This final judgment shall hereafter be set out by separate document, in accordance with Federal Rule of Civil Procedure 58.

**DONE** and **ORDERED** this the **30th** day of **September 2026**.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**